IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **STATE INDUSTRIAL PRODUCTS, CORP.** | ) | CASE NO.: |
| 5915 Landerbrook Drive, Suite 300 | ) | |
| Mayfield Heights, Ohio 44124 | ) | |
| | ) | **JUDGE:** |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **VERIFIED COMPLAINT FOR** |
| | ) | **TEMPORARY, PRELIMINARY AND** |
| | ) | **STATUS QUO INJUNCTION** |
| **TIMOTHY CHONKO,** | ) | **AND OTHER MONETARY AND NON-** |
| 1743 Harrogate Drive | ) | **MONETARY CLAIMS** |
| Augusta, Georgia 30906 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **ALLEN CHONKO** | ) | |
| 1743 Harrogate Drive | ) | |
| Augusta, Georgia 30906 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **MOMAR, INC.** | ) | |
| 1830 Ellsworth Industrial Drive NW | ) | |
| Atlanta, Georgia 30318 | ) | |
| | ) | |
| Defendants. | | |

NOW COMES Plaintiff, State Industrial Products, Corp. ("Plaintiff" or "SIP"), by and through counsel, and for its Complaint against Defendants, Timothy Chonko ("Chonko") and Momar, Inc. ("Momar") (collectively "Defendants") hereby [1]states as follows:

## THE PARTIES

1.     Plaintiff State Industrial Products, Corp. ("Plaintiff" or "SIP"), at all times pertinent here, was and is a duly organized and validly existing corporation under the laws of the

_____

[1] Plaintiff will supplement this filing with an executed verification page as soon as it is able.

State of Ohio, with its principal office located at 5915 Landerbrook Drive, Mayfield Heights, Ohio 44124.

2.      Defendant Timothy Chonko ("Timothy"), is a former SIP employee who, upon information and belief, resides in Georgia and works at 1830 Ellsworth Industrial Drive NW, Atlanta, Georgia 30318 on behalf of Defendant Momar, Inc.  While employed with SIP, Timothy regularly transacted business in the State of Ohio, attended annual sales conferences in the State of Ohio from in 2017 through 2020, received payroll processed in the State of Ohio, received SIP's confidential, proprietary and trade information from the State of Ohio, and had access to SIP's IT infrastructure including databases and electronic data that are located in the State of Ohio.

3.      Upon information and belief, Timothy currently works on behalf of Defendant Momar.

4.      Defendant Momar, Inc. ("Momar") is a company incorporated in Georgia and has its headquarters at 1830 Ellsworth Industrial Drive NW, Atlanta, Georgia 30318.   Upon information and belief, Momar regularly transacts business in the State of Ohio, employs one or more individuals in the state of Ohio, and has registered 16 of its disinfectants with the state of Ohio.   Upon information and belief, Momar has also sued one or more former Momar employees in the state of Ohio for breach of contract in connection with the employee's employment contract. *See Momar, Incorporated v. Lonnie Ridenbaugh*, Case No. 18CI0066 (Coshocton Cty. Common Pleas Ct., Ohio).

## JURISDICTION AND VENUE

5.      SIP brings this action pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.  This Court possesses subject matter jurisdiction over SIP's claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

6.      This Court possesses supplemental jurisdiction over SIP's remaining claims pursuant to 28 U.S.C. § 1367.

7.      Venue is further proper pursuant to 28 U.S.C. § 1391(b) as Timothy, Allen, and Momar conduct business activities in the District and Division.  Further, many of the events giving rise to the claims asserted herein occurred in the District and Division, the misappropriated confidential, proprietary and trade secret information was taken, accessed, and disclosed from the State of Ohio, and the damages SIP has suffered as a result occurred in the District and Division.

8.      Venue is further proper pursuant to 28 U.S.C. § 1391(b) as Timothy and SIP agreed in their Agreement to use the State Industrial Products Corporation A.D.R. Program ("ADR Agreement") to "consent to the jurisdiction of all state and federal courts in Cuyahoga County, Ohio for purposes of seeking temporary or preliminary equitable relief."  They further agreed in the ADR Agreement that both Timothy and SIP "may seek temporary or preliminary equitable relief from a court of competent jurisdiction in Cuyahoga County, Ohio, to preserve the status quo pending final resolution of a claim in the SIP ADR Program."

## FACTUAL ALLEGATIONS

9.      SIP is in the business of manufacturing and selling industrial cleaning products throughout the United States and Canada.  SIP relies on its employees to create business relationships and directly service customers, which include businesses as well as federal, state, and local governments.

10.     Defendant Timothy Chonko is a former SIP employee. SIP hired Timothy as its Business Development Manager on or about September 6, 2016.

11.     As the Business Development Manager, Timothy cultivated customer relationships, generated sales revenue, and specialized in developing and maintaining military accounts.

12.     Throughout Timothy's employment with SIP, he had extensive access to highly valuable, confidential, proprietary, and trade secret information.  This information includes, but is not limited to, compiled customers lists with key customer, vendor, and supplier contact and historical sales and forecast and customer brand guidelines and reference information; pricing structures; marketing and selling systems; business methods; processes, formulas, inventions, and product information; operating techniques including SIP's approach to keeping and gaining new business; sales training materials and instructional materials; customer preferences and personal relationships; and financial and accounting records.

13.     All of the information described above is confidential and proprietary to SIP, is not publicly known, has been generated and cultivated over many years, and gives SIP a substantial competitive advantage over its competitors.

14.     SIP has engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information, including, among other actions, requiring passwords to access computer systems and databases, restricting access to secured shared files, having personnel enter into confidentiality, non-competition, and non-solicitation agreements, preventing public access to non-public areas of SIP offices and systems, securing access to warehouses storing customer inventory, and monitoring computer and email usage.

15.     SIP terminated Timothy's employment on March 23, 2021.

16.     Defendant Allen Chonko is a former independent contractor for SIP.  The independent contractor relationship between Allen and SIP began on or about February 2, 2017.

17.     As an independent contractor for SIP, Allen was responsible for installing and servicing equipment on military bases, had access to SIP customer information and product know-

4

how, and was assigned to SIP's Fort Stewart, Fort Gordon, Hunter Airfield Base, and Fort Jackson territories.

18.     Allen ended his independent contractor relationship with SIP on January 5, 2022 and, upon information and belief, immediately thereafter began working for Defendant Momar.

19.     Timothy and Allen misappropriated SIP's confidential and proprietary information, directly competed with SIP, and solicited SIP customers on behalf of Momar after their employment and independent contractor relationships with SIP ended.

20.     Momar is a Georgia corporation that regularly conducts business in the State of Ohio and that sells services and products that are directly competitive to SIP.  Like SIP, Momar specializes in the manufacturing and sale of industrial cleaning products in the United States. According to Momar's website, Momar manufactures and sells industrial cleaning products across numerous industries.[2]

### Defendant Timothy Chonko's Employment-Related Agreements

21.     On September 6, 2016, Timothy signed an Employment Agreement with SIP ("Employment Agreement").  As a condition of Timothy's employment, SIP required Timothy to agree to confidentiality, non-competition, and non-solicitation provisions.  A true and accurate copy of the Employment Agreement is attached hereto as Exhibit 1.

22.     The Employment Agreement prohibits Timothy from using or disclosing SIP's "IMPORTANT INFORMATION" except "as authorized by [SIP] in the course of [his] employment."  (Ex. 1, ¶V.B).

23.     The Employment Agreement defines SIP's "IMPORTANT INFORMATION" as information "including but not limited to its trade secrets, confidential information, marketing and

---

[2] https://momar.com/item

selling systems, plans, business methods, processes, formulas, inventions, operating techniques and 'known how,' instructional materials, customer account records, customer lists, price lists, sales training materials and product information."  (Ex. 1, ¶V.A).

24.     The Employment Agreement also prohibits Timothy from using or disclosing SIP's Important Information for any purpose upon termination.  (Ex. 1, ¶V.B).  The Employment Agreement further requires Timothy to return Important Information to SIP "promptly and without demand" or "delete such IMPORTANT INFORMATION if electronically stored."  (Ex. 1, (V.C).

25.     In addition, Timothy agreed that for two years following the termination of the employer relationship, he would not "participate (whether as an…employee, agent, sole proprietor, consultant…or otherwise) in any business activity, in the state of Georgia as well as in any of the states where [he] conducted business for [SIP] during the 24 month period immediately prior to [his] employment ending, that competes with [SIP] or with any subsidiary or affiliate of [SIP]."  (Ex. 1, ¶VII.A.1).

26.     Further, Timothy agreed that for two years following the termination of the employer relationship, he would not "solicit of otherwise communicate with any actual or potential customer…of [SIP] with whom [he] had interacted during the last two years of my employment with [SIP], concerning actual or proposed business transaction involving an identical or substitutable product or service that is sold or utilized by [SIP]."  (Ex. 1, ¶VII.A.2).

27.     Timothy also agreed not to take "any action that would be disparaging or detrimental to [SIP's] customer or business relationships."

28.     Timothy further agreed to provide a copy of the Employment Agreement "to any person, firm, association, or corporation" that he intended to "be employed in any capacity" during

the 24-month period immediately following his employment with SIP, "if that firm, company, association, or corporation engages in any business that competes with [SIP]."

29.     The Employment Agreement further provides that if Timothy violates any of the post-employment restrictions, SIP may file claims against him, "including by not limited to claims for immediate injunctive relief, monetary damages (to the extent that those damages could be calculated), and other relief." (Ex. 1, ¶VII.C).

30.     Moreover, the Employment Agreement provides that Timothy "shall pay all attorney's fees and costs incurred by [SIP] in enforcing any of the [post-employment] restrictions." (Ex. 1, ¶VII.E).

31.     Timothy and SIP agreed to resolve any and all disputes between them through the process set forth through SIP's Alternate Dispute Resolution ("ADR") Program, which culminates in binding and final arbitration. A true and correct copy of Timothy's ADR Agreement is attached hereto as Exhibit 2. The ADR Agreement provides that either party "may seek temporary or preliminary equitable relief from a court of competent jurisdiction in Cuyahoga County, Ohio, to preserve the status quo pending final resolution of a claim in the SIP ADR Program." (Ex. 2, at 2).

32.     The Employment Agreement likewise permits parties to seek "temporary or preliminary injunctive or other equitable relief from a court to maintain the status quo and/or to prevent irreparable harm pending final resolution of a claim in the ADR Program." (Ex. 1, ¶(X)).

**Defendant Allen Chonko's Independent Contractor-Related Agreements**

33.     On February 2, 2017, Allen signed an Independent Contractor Agreement with SIP ("Independent Contractor Agreement"). As a condition of SIP's payment to Allen as an independent contractor, SIP required Allen to "maintain the confidentiality of the Company's

sales, marketing, and customer information all of which constitutes most valuable TRADE SECRETS of the Company," both during the term of the Independent Contractor Agreement and after it expired. A true and accurate copy of the Independent Contractor Agreement is attached hereto as Exhibit 3.

34.     Allen and SIP agreed to resolve any and all disputes between them through the process set forth through SIP's Alternate Dispute Resolution ("ADR") Program, which culminates in binding and final arbitration.  (Ex. 3, ¶ 8).

The Independent Contractor Agreement permits the parties to seek "temporary or preliminary injunctive or other equitable relief from a court to maintain the status quo pending final resolution of a claim in the ADR Program."  (*Id.*).

## Timothy's and Allen's Violations of, and Momar's Interference With, The Agreements

35.     After his employment with SIP ended, Timothy misappropriated SIP's confidential and proprietary information, directly competed against SIP, and solicited SIP's customers, including but not limited to on behalf of Momar.

36.     After his independent contractor relationship with SIP ended, Allen misappropriated SIP's confidential and proprietary information.

37.     Specifically, in or about January 2022, Timothy and Allen made a joint sales call to two SIP customers at the Fort Gordon Army Base in connection with work Timothy then performed for A.D.A. Supply, a competitor to SIP, and in connection with work that Allen performed for Momar.

38.     A.D.A. Supply is located in the state of Georgia and, like SIP,  provides "industrial supplies and equipment to the public and private sectors."[3]

---

[3]     https://adasupply.com/about-us/

39. Both Timothy and Allen serviced Fort Gordon for SIP during their tenure with SIP and had access to trade secret information about customers at the base including their personal contact information and product preferences. During their January 2022 visit, the two seized on Timothy's historical knowledge of Fort Gordon's product preferences to actively solicit the customer's business, leaving behind a sales quote and business cards that were later shown to SIP.

40. SIP issued a Cease and Desist Letter ("Timothy Letter") to Timothy on February 8, 2022, reminding him of his post-employment restrictions as contained in the Employment Agreement. The letter included a copy of the Employment Agreement and demanded that Timothy "immediately cease and desist from violating [his] Employment Agreement," including "ceasing all efforts to obtain business at … any account [he] serviced while at SIP." The Timothy Letter further demanded that he "stop disseminating trade secrets and immediately return any SIP information in [his] possession." A true and accurate copy of the Letter is attached hereto as Exhibit 4.

41. Timothy has failed to return any SIP information in response to the Timothy Letter and continues to violate his Employment Agreement.

42. SIP also issued a Cease and Desist Letter to Allen ("Allen Letter") on February 8, 2022, reminding him of his continuing obligation to maintain the confidentiality of SIP's trade secrets. The letter included a copy of the Independent Contractor Agreement and demanded that Allen "immediately cease and desist from violating [his] contract and interfering with [his] father's [Employment Agreement]," including "ceasing all efforts to obtain business at Fort Gordon for Momar." The Allen Letter further demanded that he immediately "return any SIP information in [his] possession, including customer contact information, pricing, literature, and product information." A true and accurate copy of the Allen Letter is attached hereto as Exhibit 5.

43. Allen has failed to return any SIP information in response to the Allen Letter and continues to violate his Independent Contractor Agreement.

44. SIP provided Momar with courtesy copies of the Timothy and Allen Letters on February 8, 2022. [*See* Ex. 4, at 3; Ex. 5, at 2].

45. In addition, on March 8, 2022, SIP issued a Cease and Desist Letter directly to Momar ("Momar Letter") requesting Momar to "confirm, in writing, that [Allen] Chonko will immediately cease and desist from using SIP trade secrets" and demanding that Momar "immediately return any SIP information that it or [Allen] Chonko possesses." A true and correct copy of the Momar Letter is attached hereto as Exhibit 6.

46. Momar has failed to return any SIP information that it or Allen possesses and upon information and belief has taken no action to ensure that Allen will refrain from using SIP trade secrets.

47. After SIP executed the Timothy Letter to Timothy (a copy of which Momar received), Timothy moved his activities to Momar, where he continues to act contrary to the Employment Agreement and SIP's interests and continues to directly compete against SIP.

48. Specifically, upon information and belief, Timothy currently competes directly against SIP, in violation of the Employment Agreement, in connection with Momar, a competitor of SIP.

49. In connection with his relationship with Momar, Timothy has solicited and communicated with multiple SIP customers with whom he interacted during the last two years of his employment with SIP in violation of the Employment Agreement. For example:

- Timothy and Allen were onsite at the facility of a SIP customer at Fort Gordon during the week of March 14, 2022 and left behind Allen's business card.

- On June 7, 2022, Timothy and a Momar representative were onsite at the facility of SIP Customer 841303 Fort Stewart Military Base. That day, a SIP employee also observed two drums of Momar cleaning product at the customer's facility and captured photo of the product, which is attached hereto as Exhibit 7.

- On June 7, 2022, Timothy and a Momar representative were onsite at the facility of SIP Customer 841310 located at the Fort Stewart Military Base. That day, a SIP employee also observed one drum of Momar product at the customer's facility.

- On June 7, 2022, Timothy and a Momar representative were onsite at the facility of SIP Customer 841304 located at the Fort Stewart Military Base. That day, a SIP employee also observed Momar product at the customer's facility and captured a photo of the product, which is attached hereto as Exhibit 8.

50. Timothy has taken SIP's confidential Important Information and has provided that information to Allen and Momar, and all Defendants have used that information to compete with SIP. Timothy and Allen continue to use that information in connection with the services they perform for Momar, including but not limited to in furtherance of soliciting SIP's customers and potential customers on behalf of Momar.

51. On June 24, 2022, SIP filed an ADR claim against Timothy alleging breaches of the Employment Agreement and misappropriation of SIP's trade secrets among other things. A true and accurate copy of SIP ADR claim against Timothy is attached hereto as Exhibit 9 (excluding attachments referenced therein).

52. On June 24, 2022, SIP filed an ADR claim against Allen alleging breaches of the Independent Contractor Agreement and misappropriation of SIP's trade secrets among other

things.  A true and accurate copy of SIP ADR claim against Allen is attached hereto as Exhibit 10 (excluding attachments referenced therein).

## COUNT ONE: REQUEST FOR STATUS QUO TEMPROARY RESTRANING ORDER AND PRELIMINARY INJUNCTION
### (Defendants Timothy and Allen Chonko)

53.     SIP incorporates herein by reference all allegations set forth in Paragraphs 1 through 52 of this Verified Complaint as if fully rewritten herein.

54.     Federal Civil Rule 65 allows this Honorable Court to issue temporary and preliminary injunctive relief under the circumstances verified in this Complaint.

55.     In this case, SIP submits the specific facts referenced in this Verified Complaint justify injunctive relief.

56.     During his employment with SIP, Timothy had extensive access to highly valuable, confidential, proprietary information about SIP's business, customers, products, prices, finances, sales strategies, and instructional materials.  As described above, this information included, among other things, compiled customers lists with key customer, vendor, and supplier information; pricing structures; marketing and selling systems; business methods; processes, formulas, inventions, and product information; operating techniques including SIP's approach to keeping and gaining new business; sales training materials and instructional materials; customer preferences and personal relationships; and financial and accounting records..   All of this information is confidential and proprietary, is not publicly known, has been generated and cultivated by SIP over many years, and gives SIP a substantial competitive advantage over its competition.

57.     During his Independent Contractor relationship with SIP, Allen had access to SIP customer information and product know-how

58.     This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

59.     All of the information that Timothy and Allen know about SIP's business, they learned by being exposed to it while working for SIP.

60.     SIP engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information.  These efforts included, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, having personnel enter into confidentiality, non-competition, and non-solicitation agreements, preventing public access to non-public areas of SIP offices and systems, securing access to warehouses storing customer inventory, and monitoring computer and email usage.

61.     Beginning no later than January 2022 and as recent as June 2022, Timothy and Allen have, without justification or privilege, misappropriated SIP's Important Information as defined in the Employment Agreement and/or SIP's confidential, proprietary, and trade secret information related to products or services used in interstate or foreign commerce by, among other things, disclosing and using SIP's confidential, proprietary, and trade secret information on behalf of Momar in connection with their work for Momar after their employment and independent contractor relationships with SIP ended.

62.     Momar, without justification or privilege, has also misappropriated and used SIP's confidential, proprietary and trade secret information, related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, using such information in connection with its active solicitation of SIP customers.

63. As a direct and proximate result of this misappropriation of its Important Information and/or trade secret information, SIP has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

64. SIP faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

65. Moreover, in the Employment Agreement, Timothy agreed not to use or disclose SIP's Important Information except as authorized by SIP; agreed not to use or disclose SIP's Important Information once his employment relationship with SIP ended; and to return to SIP all Important Information upon termination.

66. In the Employment Agreement, Timothy agreed, for a period of two years following the termination of the employment relationship, not to participate in any competing business activity in Georgia or any other state where he previously conducted business for SIP.

67. In the Employment Agreement, Timothy agreed, for a period of two years following the termination of the employment relationship, not to solicit or attempt to solicit any actual or potential SIP customers with whom he interacted during the last two years of his employment with SIP.

68. In the Employment Agreement, Timothy agreed not to take any action that would be disparaging or detrimental to SIP's customer or business relationships.

69. Timothy has breached the Employment Agreement by, among other actions, using and disclosing SIP's Important Information to Allen and Momar; soliciting or attempting to solicit SIP customers on behalf of Momar; and providing services to or working for SIP's competitors, including but not limited to Momar.

70.     As a direct and proximate result of Timothy's multiple and ongoing breaches of the Employment Agreement, SIP has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information.  SIP has no adequate remedy at law for these losses as no amount of money can compensate SIP for these losses.

71.     The Employment Agreement permits parties to seek "temporary or preliminary injunctive or other equitable relief from a court to maintain the status quo and/or to prevent irreparable harm pending final resolution of a claim in the ADR Program."  (Ex. 1, ¶X).

72.     Allen agreed to "maintain the confidentiality of the Company's sales, marketing, and customer information all of which constitutes most valuable TRADE SECRETS of the Company," both during the term of the Independent Contractor Agreement and after it expired. (Ex. 3, ¶ 8).

73.     Allen has breached the Independent Contractor Agreement by, among other actions, using and disclosing SIP's Important Information to Momar.

74.     As a direct and proximate result of Allen's multiple and ongoing breaches of the Independent Contractor Agreement, SIP has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information.  SIP has no adequate remedy at law for these losses as no amount of money can compensate SIP for these losses.

75.     The Independent Contractor Agreement permits parties to seek "temporary or preliminary injunctive or other equitable relief from a court to maintain the status quo pending final resolution of a claim in the ADR program."   (Ex. 3, ¶ 8).

76.     Timothy and Allen have retained, accessed, used, and disclosed SIP's confidential, proprietary, and trade secret information in direct competition with SIP, including to compete unfairly with SIP, and to contact and solicit SIP customers.  Further use of SIP's confidential and proprietary information will jeopardize SIP's ability to fairly compete in the marketplace and give Defendants an unfair and unlawful advantage.

77.     Momar, without justification or privilege, has also misappropriated and used SIP confidential, proprietary and trade secret information, related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, using such information in connection with its active solicitation of SIP customers.

78.     As a direct and proximate result of this misappropriation of its Important Information and/or trade secrets, SIP has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its Important Information.

79.     SIP faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

80.     SIP has submitted an ADR claim against Timothy pursuant to the parties' agreed-upon ADR Program which permits SIP to "seek temporary or preliminary equitable relief from a court of competent jurisdiction in Cuyahoga County, Ohio, to preserve the status quo pending final resolution of a claim in the SIP ADR Program."  SIP has also submitted an ADR claim against Allen pursuant to the parties' agreed-upon ADR Program which permits SIP to seek "temporary

or preliminary injunctive or other equitable relief from a court to maintain the status quo pending final resolution of a claim in the ADR Program."

81.     SIP is entitled to a status quo temporary restraining order and status quo preliminary injunctive relief, enjoining and restraining Timothy, Allen, and any other person or entity acting in their aid or in concert with them as follows:

(a) prohibiting Timothy and Allen from performing any work or services on behalf of Momar and requiring them to sever their improper employment or contractor relationships with Momar;

(b) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from accessing, using, copying, retaining, and/or disclosing any of SIP's trade secrets or confidential information;

(c) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from soliciting to attempting to solicit any actual or potential SIP customers with whom Timothy or Allen interacted during the last two years of their employment or independent contractor relationships with SIP;

(d) prohibiting Timothy and Allen from engaging in any conduct that would be detrimental to SIP's customer and business relationships;

(e) prohibiting Momar (and anyone or entity acting in their aid or in concert with them) from encouraging, soliciting, aiding or abetting any further violations by Timothy or Allen;

(f) requiring Defendants (and anyone or entity acting in their aid or in concert with them) to return all of SIP's property and information to SIP, keeping no copy immediately;

17

(g) prohibiting Timothy and Allen from engaging in any other conduct that would otherwise violate their Agreements with SIP.

82.     Upon information and belief, Defendants have already used SIP's confidential, proprietary, and trade secret information in direct competition with SIP, including to compete unfairly and to contact and solicit SIP customers. Further use of SIP's confidential and proprietary information will jeopardize SIP's ability to fairly compete in the marketplace and give Defendants an unfair and unlawful advantage. For these reasons and those more fully described in this Verified Complaint, SIP seeks a status quo temporary restraining order and preliminary injunction to prevent this immediate and irreparable harm until such time as a final order can be obtained through final and binding arbitration.

## COUNT TWO:  REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
### (Defendant Momar)

83.     SIP incorporates herein by reference all allegations set forth in Paragraphs 1 through 82 of this Verified Complaint as if fully rewritten herein.

84.     Federal Civil Rule 65 allows this Honorable Court to issue temporary and preliminary injunctive relief under the circumstances verified in this Complaint.

85.     In this case, SIP submits the specific facts referenced in this Verified Complaint justify injunctive relief.

86.     During his employment with SIP, Timothy had extensive access to highly valuable, confidential, proprietary information about SIP's business, customers, products, prices, finances, sales strategies, and instructional materials.  As described above, this information included, among other things, compiled customers lists with key customer, vendor, and supplier information; pricing structures; marketing and selling systems; business methods; processes, formulas,

inventions, and product information; operating techniques including SIP's approach to keeping and gaining new business; sales training materials and instructional materials; customer preferences and personal relationships; and financial and accounting records. All of this information is confidential and proprietary, is not publicly known, has been generated and cultivated by SIP over many years, and gives SIP a substantial competitive advantage over its competition.

87. During his Independent Contractor relationship with SIP, Allen had access to SIP customer information and product know-how.

88. This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

89. All of the information that Timothy and Allen know about SIP's business, they learned by being exposed to it while working for SIP.

90. SIP engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information. These efforts included, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, having personnel enter into confidentiality, non-competition, and non-solicitation agreements, preventing public access to non-public areas of SIP offices and systems, securing access to warehouses storing customer inventory, and monitoring computer and email usage.

91. Beginning no later than January 2022 and as recent as June 2022, Timothy and Allen have, without justification or privilege, misappropriated SIP's Important Information as defined in the Employment Agreement and/or SIP's confidential, proprietary, and trade secret information related to products or services used in interstate or foreign commerce by, among other

things, disclosing and using SIP's confidential, proprietary, and trade secret information on behalf of Momar in connection with their work for Momar after their employment and independent contractor relationships with SIP ended.

92.     Momar, without justification or privilege, has also misappropriated and used SIP's confidential, proprietary and trade secret information, related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, using such information in connection with its active solicitation of SIP customers through Timothy and Allen.

93.     As a direct and proximate result of this misappropriation of its Important Information and/or trade secret information, SIP has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

94.     SIP faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

95.     Moreover, in the Employment Agreement, Timothy agreed not to use or disclose SIP's Important Information except as authorized by SIP; agreed not to use or disclose SIP's Important Information once his employment relationship with SIP ended; and to return to SIP all Important Information upon termination.

96.     In the Employment Agreement, Timothy agreed, for a period of two years following the termination of the employment relationship, not to participate in any competing business activity in Georgia or any other state where he previously conducted business for SIP.

97.     In the Employment Agreement, Timothy agreed, for a period of two years following the termination of the employment relationship, not to solicit or attempt to solicit any actual or potential SIP customers with whom he interacted during the last two years of his employment with SIP.

98.     In the Employment Agreement, Timothy agreed not to take any action that would be disparaging or detrimental to SIP's customer or business relationships.

99.     Timothy has breached the Employment Agreement by, among other actions, using and disclosing SIP's Important Information to Momar; soliciting or attempting to solicit SIP customers on behalf of Momar; and providing services to or working for SIP's competitors, including but not limited to Momar.

100.    As a direct and proximate result of Timothy's multiple and ongoing breaches of the Employment Agreement, SIP has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information.  SIP has no adequate remedy at law for these losses as no amount of money can compensate SIP for these losses.

101.    Allen agreed to "maintain the confidentiality of the Company's sales, marketing, and customer information all of which constitutes most valuable TRADE SECRETS of the Company," both during the term of the Independent Contractor Agreement and after it expired. (Ex. 3, ¶ 8).

102.    Allen has breached the Independent Contractor Agreement by, among other actions, using and disclosing SIP's Important Information to Momar.

103.    As a direct and proximate result of Allen's multiple and ongoing breaches of the Independent Contractor Agreement, SIP has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating

its confidential and proprietary information.  SIP has no adequate remedy at law for these losses as no amount of money can compensate SIP for these losses.

104.    The Independent Contractor Agreement also permits parties to seek "temporary or preliminary injunctive or other equitable relief from a court to maintain the status quo pending final resolution of a claim in the ADR program."   (Ex. 3, ¶ 8).

105.    Timothy and Allen have retained, accessed, used, and disclosed SIP's confidential, proprietary, and trade secret information in direct competition with SIP, including to compete unfairly with SIP, and to contact and solicit SIP customers.  Further use of SIP's confidential and proprietary information will jeopardize SIP's ability to fairly compete in the marketplace and give Defendants an unfair and unlawful advantage.

106.    Momar, without justification or privilege, has also misappropriated and used SIP confidential, proprietary and trade secret information, related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, using such information in connection with its active solicitation of SIP customers through Timothy and Allen.

107.    As a direct and proximate result of this misappropriation of its Important Information and/or trade secrets, SIP has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its Important Information.

108.    SIP is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Momar, and any other person or entity acting in its aid or in concert with it as follows:

> (a) prohibiting Timothy and Allen from performing any work or services on behalf of Momar and requiring him to sever his improper employment or contractor relationship with Momar;

(b) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from accessing, using, copying, retaining, and/or disclosing any of SIP's trade secrets or confidential information;

(c) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from soliciting to attempting to solicit any actual or potential SIP customers with whom Timothy or Allen interacted during the last two years of their employment or independent contractor relationships with SIP;

(d) prohibiting Timothy and Allen from engaging in any conduct that would be detrimental to SIP's customer and business relationships;

(e) prohibiting Momar (and anyone or entity acting in their aid or in concert with them) from encouraging, soliciting, aiding or abetting any further violations by Timothy or Allen;

(f) requiring Defendants (and anyone or entity acting in their aid or in concert with them) to return all of SIP's property and information to SIP, keeping no copy immediately;

(g) prohibiting Timothy or Allen from engaging in any other conduct that would otherwise violate their Agreements with SIP.

109. Upon information and belief, Defendants have already used SIP's confidential, proprietary, and trade secret information in direct competition with SIP, including to compete unfairly and to contact and solicit SIP customers. Further use of SIP's confidential and proprietary information will jeopardize SIP's ability to fairly compete in the marketplace and give Defendants an unfair and unlawful advantage. For these reasons and those more fully described in this Verified Complaint, SIP seeks a temporary restraining order and preliminary injunction to prevent this

immediate and irreparable harm until such time as a final order can be obtained.

## COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS
## UNDER THE DEFEND TRADE SECRETS ACT
### (All Defendants)

110.    SIP incorporates herein by reference all allegations set forth in Paragraphs 1 through 109 as if fully rewritten.

111.    During his employment with SIP, Timothy had extensive access to highly valuable, confidential, proprietary information about SIP's business, customers, products, prices, finances, sales strategies, and instructional materials.  As described above, this information included, among other things, compiled customers lists with key customer, vendor, and supplier information; pricing structures; marketing and selling systems; business methods; processes, formulas, inventions, and product information; operating techniques including SIP's approach to keeping and gaining new business; sales training materials and instructional materials; customer preferences and personal relationships; and financial and accounting records.

112.    During his Independent Contractor relationship with SIP, Allen had access to SIP customer information and product know-how

113.    All of this information is confidential and proprietary, is not publicly known, has been generated and cultivated by SIP over many years, and gives SIP a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(C).

114.    This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

115.    All of the information that Timothy and Allen know about SIP's business, they learned by being exposed to it while working for SIP.

116.    SIP engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information.  These efforts included, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, having personnel enter into confidentiality, non-competition, and non-solicitation agreements, preventing public access to non-public areas of SIP offices and systems, securing access to warehouses storing customer inventory, and monitoring computer and email usage.

117.    These efforts also included, among other things, requiring employees who were exposed to confidential information, including Timothy, to sign written agreements that restrict their ability to use or disclose such information and that forbid them from soliciting or competing with SIP after their employment with SIP ends.

118.    Upon information and belief, beginning no later than February 2022 and as recent as June 2022, Timothy and Allen have, without justification or privilege, misappropriated SIP's Important Information as defined in the Employment Agreement and/or its confidential, proprietary, and trade secret information related to products or services used in, interstate or foreign commerce by, among other things, disclosing and using SIP's confidential, proprietary, and trade secret information on behalf of Momar in connection with his work for Momar after his SIP employment ended.

119.    Upon information and belief, Momar, without justification or privilege, has also misappropriated and used SIP's confidential, proprietary and trade secret information, related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, using such information in connection with its active solicitation of SIP customers.

120.    As a direct and proximate result of this misappropriation of its Important Information and/or trade secrets, SIP has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

121.    SIP faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

122.    All damages associated with Timothy and Allen's violations must be heard in arbitration pursuant to the ADR Program.

123.    SIP is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or in concert with them as set forth above in Count One.

124.    As a direct and proximate result of Defendants' actions, SIP has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including attorney fees and costs associated with this action.

### COUNT FOUR: MISAPPROPRIATION OF TRADE SECRETS
### UNDER THE OHIO UNIFORM TRADE SECRETS ACT
### (All Defendants)

125.    SIP incorporates herein by reference all allegations set forth in Paragraphs 1 through 123 as if fully rewritten.

126.    During his employment with SIP, Timothy had extensive access to highly valuable, confidential, proprietary information about SIP's business, customers, products, prices, finances, sales strategies, and instructional materials.  As described above, this information included, among other things, compiled customers lists with key customer, vendor, and supplier information; pricing structures; marketing and selling systems; business methods; processes, formulas,

inventions, and product information; operating techniques including SIP's approach to keeping and gaining new business; sales training materials and instructional materials; customer preferences and personal relationships; and financial and accounting records.

127.    During his Independent Contractor relationship with SIP, Allen had access to SIP customer information and product know-how

128.    All of this information is confidential and proprietary, is not publicly known, has been generated and cultivated by SIP over many years, and gives SIP a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

129.    This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

130.    All of the information that Timothy and Allen know about SIP's business, they learned by being exposed to it while working for SIP.

131.    SIP engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information.  These efforts included, among other things, requiring passwords to access computer systems and databases, restricting access to secured shared files, having personnel enter into confidentiality, non-competition, and non-solicitation agreements, preventing public access to non-public areas of SIP offices and systems, securing access to warehouses storing customer inventory, and monitoring computer and email usage.

132.    These efforts also included, among other things, requiring employees who were exposed to confidential information, including Chonko, to sign written agreements that restrict

27

their ability to use or disclose such information and that forbid them from soliciting or competing with SIP after their employment with SIP ends.

133.    Upon information and belief, beginning no later than January 2022 and as recent as June 2022, Timothy and Allen have, without justification or privilege, misappropriated SIP's Important Information as defined in the Employment Agreement and/or confidential, proprietary, and trade secret information related to products or services used in, interstate or foreign commerce by, among other things, disclosing and using SIP's confidential, proprietary, and trade secret information on behalf of Momar in connection with their work for Momar after their relationships with SIP ended.

134.    Upon information and belief, Momar, without justification or privilege, has also misappropriated and used SIP's confidential, proprietary and trade secret information, related to products or services used in, or intended for use in, interstate or foreign commerce by, among other things, using such information in connection with its active solicitation of SIP customers.

135.    As a direct and proximate result of this misappropriation of its trade secrets, SIP has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

136.    SIP faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

137.    All damages associated with Timothy and Allen's violations must be heard in arbitration pursuant to the ADR Program.

138.    SIP is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or in concert with them as set forth above in Count One.

139.    As a direct and proximate result of Defendants' actions, SIP has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including attorney fees and costs associated with this action.

## COUNT FIVE: BREACH OF CONTRACT
### (Defendant Timothy Chonko)

140.    SIP incorporates by reference all allegations set forth in Paragraphs 1 through 139 as if fully rewritten.

141.    On September 6, 2016, Timothy entered into an Employment Agreement ("Agreement") with SIP to serve as its Business Development Manager.

142.    In the Employment Agreement, Timothy agreed not to use or disclose SIP's Important Information except as authorized by SIP; agreed not to use or disclose SIP's Important Information once their employment relationship with SIP ended; and to return to SIP all Important Information upon termination.

143.    In the Employment Agreement, Timothy agreed, for a period of two years following the termination of the employment relationship, not to solicit or attempt to solicit any actual or potential SIP customers with whom he interacted during the last two years of his employment with SIP.

144.    In the Employment Agreement, Timothy agreed, for a period of two years following the termination of the employment relationship, not to participate in any competing business activity in Georgia or any other state where he previously conducted business for SIP.

145.    SIP has performed all of its obligations under the Employment Agreement and all conditions precedent to the enforcement of the Employment Agreement have been satisfied, waived, or abandoned.

146.     Timothy has breached the Employment Agreement by, among other actions, using and disclosing SIP's Important Information to Momar; soliciting or attempting to solicit SIP customers on behalf of Momar; and providing services to or working for SIP's direct competitor, Momar; and engaging in conduct detrimental to SIP's customer or business relationships, including but not limited to the foregoing.

147.     All damages associated with Timothy's violations must be heard in arbitration pursuant to Timothy's Employment and ADR Agreements.

148.     As a direct and proximate result of Timothy's multiple and ongoing breaches of his Agreement, SIP has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information.  SIP has no adequate remedy at law for these losses as no amount of money can compensate SIP for these losses.

149.     SIP is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert with them as set forth above in Count One.

150.     As a direct and proximate result of Timothy's actions, SIP has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000)  including any attorney fees and costs associated with this action.

## COUNT FIVE:  BREACH OF CONTRACT
### (Defendant Allen Chonko)

151.     SIP incorporates by reference all allegations set forth in Paragraphs 1 through 150 as if fully rewritten.

152.     On February 2, 2017, Allen entered into an Independent Contractor Agreement with SIP.

153.     In the Independent Contractor Agreement, Allen agreed to "maintain the confidentiality of the [SIP's] sales, marketing, and customer information," both during the term of the Independent Contractor Agreement and after it expired.

154.     SIP has performed all of its obligations under the Independent Contractor Agreement and all conditions precedent to the enforcement of the Independent Contractor Agreement have been satisfied, waived, or abandoned.

155.     Allen has breached the Independent Contractor Agreement by, among other actions, using and disclosing SIP's Important Information to Momar including for purposes of soliciting or attempting to solicit SIP customers on behalf of Momar.

156.     All damages associated with Allen's violations must be heard in arbitration pursuant to the Independent Contractor Agreement and ADR Program.

157.     As a direct and proximate result of Allen's multiple and ongoing breaches of his Agreement, SIP has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information.  SIP has no adequate remedy at law for these losses as no amount of money can compensate SIP for these losses.

158.     SIP is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert with them as set forth above in Count One.

159.    As a direct and proximate result of Allen's actions, SIP has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including any attorney fees and costs associated with this action.

## COUNT SIX: TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS
### (Defendant Momar)

160.    SIP incorporates herein by reference all allegations set forth in Paragraphs 1 through 159 as if fully rewritten.

161.    Upon information and belief, Momar was aware of SIP's relationship with Timothy and his Agreement with SIP, and without justification or privilege, wrongfully interfered with those contractual and business relationships by soliciting and accepting services from Timothy and Allen, and potentially others, and using SIP's confidential and proprietary information for purposes of unlawfully competing against SIP, including but not limited to for purposes of soliciting SIP customers through Timothy.

162.    Upon information and belief, Momar was aware of SIP's relationship with Allen and Allen's Agreement with SIP, and without justification or privilege, wrongfully interfered with those contractual and business relationships by using SIP's confidential and proprietary information for purposes of unlawfully competing against SIP, including but not limited to for purposes of soliciting SIP customers through Allen.

163.    Upon information and belief, Momar was aware of SIP's relationship with various actual and prospective customers and, without justification or privilege, wrongfully interfered with SIP's customer contracts and/or prospective relationships and diverted business opportunities from

SIP by using SIP's protected confidential and proprietary information that it unlawfully received from Timothy and/or Allen in competitive activity with SIP.

164.    Through its actions, Momar has maliciously, willfully, and intentionally interfered with SIP's business, customer, employment, and contractual relationships.

165.    As a direct and proximate result of Momar's actions, SIP faces the immediate and irreparable loss of its competitive position, the loss of business goodwill, and the loss of sales.  No amount of money could compensate SIP for these losses.

166.    SIP is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert with them as set forth above in Count One.

167.    As a direct and proximate result of Momar's actions, SIP has also been damaged in a monetary amount, including punitive damages, to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) including any attorney fees and costs associated with this action.

## **DAMAGES**

WHEREFORE, SIP respectfully requests that this Court Order as follows:

1.    That this Court issue a status quo injunction that will temporarily and preliminarily enjoin and restrain Chonko and any other person or entity acting in aid or concert with him as follows:

> (a) prohibiting Timothy and Allen from performing any work on behalf of Momar and requiring them to sever their improper employment or contractor relationships with Momar;

(b) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from accessing, using, copying, retaining, and/or disclosing any of SIP's trade secrets or confidential information;

(c) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from soliciting to attempting to solicit any actual or potential SIP customers with whom Timothy and/or Allen interacted during the last two years of their employment or contractor relationships with SIP;

(d) prohibiting Timothy and Allen from engaging in any conduct that would be detrimental to SIP's customer and business relationships;

(e) prohibiting Momar (and anyone or entity acting in their aid or in concert with them) from encouraging, soliciting, aiding or abetting any further violations by Timothy or Allen;

(f) requiring Defendants (and anyone or entity acting in their aid or in concert with them) to immediately return all of SIP's property and information to SIP, keeping no copy;

(g) prohibiting Timothy and Allen from engaging in any other conduct that would otherwise violate his Agreement with SIP.

2.     That this Court issue a status quo injunction that will temporarily and preliminarily enjoin and restrain Momar and any other person or entity acting in aid or concert with it as follows:

(a) prohibiting Timothy and Allen from performing any work on behalf of Momar and requiring them to sever their improper employment or contractor relationships with Momar;

(b) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from accessing, using, copying, retaining, and/or disclosing any of SIP's trade secrets or confidential information;

(c) prohibiting Defendants (and anyone or entity acting in their aid or in concert with them) from soliciting to attempting to solicit any actual or potential SIP customers with whom Timothy and/or Allen interacted during the last two years of their employment or independent contractor relationships with SIP;

(d) prohibiting Timothy and Allen from engaging in any conduct that would be detrimental to SIP's customer and business relationships;

(e) prohibiting Momar (and anyone or entity acting in their aid or in concert with them) from encouraging, soliciting, aiding or abetting any further violations by Timothy or Allen;

(f) requiring Defendants (and anyone or entity acting in their aid or in concert with them) to immediately return all of SIP's property and information to SIP, keeping no copy;

(g) prohibiting Timothy and Allen from engaging in any other conduct that would otherwise violate their Agreements with SIP.

3.    That SIP be awarded its reasonable attorneys' fees and costs;

4.    Such other relief in SIP's favor that the Court deems just and required under the circumstances of this case.

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

_s/ Stephen S. Zashin_
Stephen S. Zashin (0064557)

35

ssz@zrlaw.com
Lauren M. Drabic (0097448)
lmd@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441
F: (216) 696-1618

*Attorneys for Plaintiff*
*State Industrial Products, Corp.*

**VERIFICATION**

STATE OF OHIO                )

                                      )

                                      )    SS:

                                      )

COUNTY OF CUYAHOGA       )

       I swear that the facts recited in the foregoing Complaint are true and accurate to the best of my knowledge.

_____

Donald DiPaulo
State Industrial Products, Corp.

SWORN TO BEFORE ME and subscribed in my presence this _____ day of June, 2022.

_____

Notary Public
My commissions expires on:

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 24, 2022, the foregoing *Verified Complaint for Temporary, Preliminary and Status Quo Injunction and Other Monetary and Non-Monetary Claims* was filed electronically. All parties and/or counsel were served via electronic mail and process server or other approved service method to accept service as documented in the Certification of Counsel and Return of Service.

*s/ Stephen S. Zashin*
Stephen S. Zashin (0064557)
ssz@zrlaw.com
*One of the Attorneys for Plaintiff*
